# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 10, 2015

## ERIC O'NEIL TURNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. CR2282014     Dee David Gay, Judge**

———————————————————

**No. M2014-02368-CCA-R3-PC – Filed April 1, 2016**

———————————————————

Petitioner, Eric O'Neil Turner, pled guilty to three counts of aggravated statutory rape, a Class D felony, with an agreed sentence of nine years for each count with one conviction to be served consecutively to the others for an effective eighteen-year sentence as a persistent offender. The sentence was suspended with time served, and Petitioner was immediately released on probation. Petitioner filed a petition for post-conviction relief alleging that his trial counsel provided ineffective assistance and that Petitioner's guilty plea was unknowingly and involuntarily entered. Following an evidentiary hearing, the post-conviction court denied relief. Following a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Micah Ketron, Gallatin, Tennessee, for the Appellant, Eric O'Neil Turner.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

*Guilty plea hearing*

On April 4, 2013, Petitioner entered guilty pleas to three counts of aggravated statutory rape, and the State gave the following factual basis for Petitioner's pleas:

Between late March, early April of 2012, and about middle of June 2012, [Petitioner] engaged in a periodic sexual relationship with a 14-year-old minor who lived nearby who was also friends with his girlfriend that he was living with at the time. They engaged in oral sex and intercourse on a number of occasions. For Count Two the date is April 1st to April 15th on the indictment; Count Three is April 1st to May 31st; and Count Nine is May 12th - - between May 12th and June 15th. All of those sexual encounters did take place at [Petitioner's] residence on Strawberry Street in Portland, Sumner County.

At the guilty plea hearing, the trial court noted that Petitioner had ten prior felony convictions. The court also informed Petitioner that he would be on probation and would have rules of probation. The trial court said: "I know that [trial counsel] is always very thorough. You must register as a sex offender. You must comply with all sex offender directives, have a psychosexual evaluation, and there's a $200 fine for each count." When Petitioner was asked if that was his understanding of the agreement, Petitioner replied: "Yes, sir." Petitioner also indicated that he did not have any questions about that information. The trial court informed Petitioner of his constitutional rights, and Petitioner agreed that he was giving up those rights. The following exchange also took place concerning representation of Petitioner by trial counsel:

THE COURT:     Are you satisfied with the services of [trial counsel]?

[PETITIONER]:   Yes, sir.

THE COURT:     Do you believe he's given you good advice and good representation?

[PETITIONER]:   Yes, sir.

THE COURT:     Is there anything that you wanted him to do for you that he did not do that was within his control as your attorney?

[PETITIONER]:   No, sir.

The following exchange also took place concerning Petitioner having no contact with the victim:

[PROSECUTOR]: There's one thing that we neglected to put on there. I don't believe it's going to be an issue for anybody, but one thing that we had - - I had said on my initial offer and we had to rewrite the form - -

2

was no contact with the victim in this case or with her family and no contact with any other minors. That's not - -

THE COURT:            By all means, sure.

[PROSECUTOR]:            I missed that. I assume [Petitioner] does not have a problem with that.

[PETITIONER]:            No.

[TRIAL COUNSEL]:            He's accepted that.

Finally, the following exchange took place concerning the CDs and DVDs contained in discovery:

[TRIAL COUNSEL]:            Judge, I would like to put on the record with [Petitioner] here, just so that we clarify this point. [Petitioner] and I discussed his reviewing the DVDs and CDs involved in the discovery. And because of the juvenile involvement as a victim, I stated to him that I would have to come to the Court with a motion and have the Court issue an order before I would release those DVDs or the CDs to him or with anyone else for his review.

THE COURT:            Okay. You understand that you've got a right to do that, but you give that up. Do you understand? To listen to those tapes?

[PETITIONER]:            Yeah, I didn't get an opportunity to.

THE COURT:            But you - -

[PETITIONER]:            I understand.

THE COURT:            But, also, wasn't there a preliminary hearing on this case?

[PROSECUTOR]:            Yes, Your Honor.

THE COURT:            And you were there for that?

[PETITIONER]:            Yes, sir.

3

*Post-conviction hearing*

At the post-conviction hearing, it was noted that a probation revocation hearing was held on February 7, 2014. Petitioner's probation was revoked, and he was ordered to serve his eighteen-year sentence in confinement. Petitioner then filed a timely petition for post-conviction relief on February 14, 2014. We note that this court affirmed Petitioner's probation revocation on appeal. *State v. Eric O. Turner*, No. M2014-00597-CCA-R3-CD, 2015 WL 3563053 (Tenn. Crim. App. June 9, 2015).

At the post-conviction hearing, Petitioner testified that he pled guilty in this case because trial counsel convinced him that trial counsel did not want to help him, and he did not feel that trial counsel was representing him properly. Petitioner claimed that he told trial counsel that he wanted a trial but trial counsel said, "You don't want to go to trial with me." Petitioner testified that trial counsel also convinced him that the judge, prosecutor, and everyone else was against him. Trial counsel also told him that he would not receive a fair trial.

Petitioner testified that he wanted to hear the CDs and view DVDs obtained from the State in discovery because they contained witnesses' statements. He also claimed that the victim said that she lied at the preliminary hearing. He said that trial counsel told him the jail had no way for him to review the CDs or DVDs. Petitioner testified that trial counsel also told him that he could not view the DVDs because the victim was a minor, and trial counsel needed to get permission from the court for Petitioner to view the DVDs. He said that trial counsel told him that the trial court denied the motion to view the DVDs. Petitioner testified that he then signed a "contract" to have the CDs and DVDs released to Petitioner's cousin, Chris Brewer. Petitioner said that trial counsel gave Petitioner's family the "run around" and would not release the DVDs or CDs. Petitioner testified that reviewing the DVDs and CDs would have affected his decision to plead guilty and that he could use them to "prove [his] innocence."

Petitioner claimed that someone named "Roscoe," who lived across the road from Petitioner, committed the offenses in this case. He testified that the victim later admitted that "Roscoe" committed the offenses. Petitioner said that at the preliminary hearing the victim admitted that she lied about Petitioner. He also testified that he told police about "Roscoe."

Petitioner testified that he signed a sixteen-year plea agreement in this case but then "withdrew from it." He admitted that he filed the post-conviction petition after his probation was revoked; however, he testified that he planned to file the petition before his probation revocation. Petitioner said that he told his probation officer the day after the

4

guilty plea submission hearing that he planned to file an appeal because trial counsel "sold [him] out."

Petitioner testified that he wanted to withdraw the guilty plea because the plea agreement had a no-contact order with the victim or any other minor. He said that trial counsel had told him that the State would waive the no-contact restriction if Petitioner agreed to serve two additional years. Petitioner asserted that the sex offender rules already contained a provision about contact with the victim or other minors. He said: "I took the two more years and - - but we was going to leave the rules, the agreed no contact with victim or any minors, up to the sex offender registry. It was already enforcement, you know. Like I said, I was just trying to get out and get some help at that point." Petitioner testified that the line on "no contact" was left blank on the new plea agreement, and two more years were added to the sentence for a total of eighteen years. After Petitioner signed the new agreement, the "no contact with the victim" language was added.

Petitioner testified that trial counsel did not review the rules of probation with him. He said that trial counsel told him about going to classes and reviewed "[w]hat's on the front of the petition of waiver, the classes, the sex offender registry, he went over that, but he told me that - - I assumed that the judge was going to go over them, the rules." Petitioner testified that he did not understand because he had never been on probation. He said that he went "[s]traight to prison" for his previous ten felony convictions. Petitioner then clarified that he was placed on community corrections after being released from prison on a previous conviction and that he was violated after two weeks. Petitioner testified that trial counsel did not review the "specialized sexual directives" with him on April 4, 2013, and he first saw the rules on April 10, 2013, at the probation office. He said that Tammy Wright reviewed the directives with him, and he signed them. Petitioner testified that he did not agree to the rules, and he did not want to sign them. He said, "[Ms. Wright] told me if I didn't sign them, then, she was going to bring me back across the road."

Petitioner testified that during the guilty plea submission hearing the trial court never asked him if his plea was willingly or voluntarily entered or whether anyone had made any promises to him in exchange for entering the plea. Petitioner testified that he and trial counsel "never talked about one detail of this case; not one." He further claimed: "The only thing we talked about was me not hearing those CDs, the denying of the judge. As far as 'so we have any evidence' or as far as what they said, never. We never went over the motion of discovery. He never went over nothing with me."

On cross-examination, Petitioner testified that he had previously been released on parole. He admitted that he had pled guilty in at least four cases to felony convictions.

5

Petitioner testified that trial counsel read the guilty plea to him, and he signed it. The plea agreement indicated that Petitioner "freely and voluntarily" waived his right to a jury trial. Petitioner testified that he was not guilty of the crimes that he pled guilty to on April 4, 2013, despite telling the trial court that he was guilty. He claimed that trial counsel told him that he had to say that he was guilty. At the guilty plea submission the trial court also asked Petitioner why he was having sexual relations with a fourteen-year-old girl, and Petitioner responded, "Bad choice."

Trial counsel testified that he was appointed to represent Petitioner after the preliminary hearing. Concerning the CDs or DVDs, trial counsel testified:

> Well, I had in the past had some difficulty with the jail being able to have a client review DVDs or CDs, and I may have - - I'm just having to speculate here, but I may have run into that same problem in talking with them about [Petitioner's] case.
>
> [Petitioner] indicated that we had discussed me giving the DVDs and CDs to a cousin and that I had him sign a document to that effect authorizing me to do that. That is, in fact, correct.
>
> My concern always is I'm not releasing discovery material to anyone other than the defendant unless the defendant authorizes me to do that. Once I had had an opportunity to review the CDs and DVDs, the interview, particularly of the minor victim, I had growing concerns that were these DVDs or CDs released to anyone outside the jail - - there were statements made by the minor victim that spoke to her sexual activity, prior sexual activity.
>
> My concerns were that a relative or friend of the defendant could take it upon himself or be directed by the defendant to use that somehow to intimidate or threaten the victim into not testifying; otherwise, her reputation, et cetera, et cetera, would be spread all over the world, whatever, put on the Internet, whatever the situation may be.
>
> So that's when I told [Petitioner] that I wasn't releasing the DVDs or CDs to anyone and that if he wanted to have those in the jail that we would have to have an order of the Court to do that. And I filed a motion - - I would have to file a motion to get an order for the Court to allow that to happen.

6

Trial counsel admitted that he never filed a motion with the trial court concerning the DVDs and CDs. He testified that he could have played the CDs and DVDs for Petitioner with the "assistance of the jail." Trial counsel testified that it was not his practice to carry a laptop around with him. Trial counsel further testified:

> On the occasions when I have had a client that's been approved to view DVDs or CDs, I set that up through the jail and then I allow them to do that at the jail, but I'm not personally sitting there. I review personally every CD and every DVD that's in the discovery. I personally do that. I do that because I think I, much better than my client, am able to assess what's the impact of the evidence that's presented in the CD or the DVD. That's my job.
>
> It's not my client's job to make a determination or assessment of how valuable or how productive that evidence is going to be for the State.

Trial counsel testified that Petitioner received a copy of everything that was provided to trial counsel in discovery with the exception of the DVDs and CDs. Trial counsel testified that he personally reviewed the DVDs and CDs. He also said that he reviewed the content of them with Petitioner, and they discussed it. He told Petitioner that the victim was "going to make a great witness if you take this matter to trial."

Trial counsel testified that he did not refuse to help Petitioner, and he was not afraid to take Petitioner's case to trial. When asked if he reviewed the rules of probation with Petitioner before the plea, trial counsel testified:

> My experience with [the prosecutor] was as follows, in the last months that he was here: [the prosecutor] had a procedure that he wished someone - - not wished - - he required someone from State probation to come down and go over the terms of the sex offender directives, the sex offender registry, and obviously the probation that was going to be established with that.
>
> So I did go over that this was a normal situation where I might have taken back the rules of probation and go over that? No, because I knew that that person was coming down on that day to go over the sex offender registry and the sex offender directives and the probationary issues. So, no, I did not do that.

Trial counsel saw a probation officer in the "holding area" before Petitioner's plea was entered. However, trial counsel did not go in the "holding area."

Although trial counsel did not read the guilty plea form to Petitioner "word for word," he reviewed it with Petitioner, and Petitioner understood the charges against him and the plea agreement. Trial counsel reviewed sentencing percentages and eligibility for parole with Petitioner and Petitioner indicated that he understood. Trial counsel reviewed Petitioner's constitutional rights with him. Concerning the voluntariness of Petitioner's guilty plea, trial counsel testified:

> If [Petitioner] on that day had felt that he was being coerced, abused, neglected, in any way, shape, or form, believe me, [Petitioner] would have let the Court know that I had not properly represented him, hadn't done anything for him, wasn't going to help him, and said he wanted a trial. But [Petitioner] did not do that, as the record, the transcription, reflects.

Trial counsel testified that if Petitioner had wanted a trial, he would have received one. He said Petitioner knew what the victim's testimony would be, and Petitioner made an "informed choice."

On cross-examination, trial counsel testified that he did not recall Petitioner "ever flatly" saying that he wanted a jury trial. He said that the State made an initial plea offer, and Petitioner made a counter-offer. Trial counsel agreed that the State was not required to provide witnesses' statements in discovery; however, the district attorney's office had an "open discovery policy."

Trial counsel further testified that on the day of the plea, Petitioner told trial counsel that he was "really tired of being in jail" and that he needed out because of his family. Trial counsel testified that Petitioner wanted trial counsel to "work him a deal that would allow him to be released from custody [that day]." Trial counsel was able to work out a plea for Petitioner that required a "bump up in the amount of time that he would be on probation[.]" Trial counsel testified that the prosecutor changed the plea offer from sixteen to eighteen years in exchange for allowing Petitioner to be released immediately on time already served. When asked if the prosecutor would have allowed Petitioner to have contact with the victim, trial counsel replied, "Absolutely not." Trial counsel testified that the transcript of the guilty plea hearing indicated that the absence of the no contact provision was inadvertently left off of the eighteen-year plea agreement. He said:

> I think [the prosecutor] just - - as we were - - as I was preparing the
> form - - I think the last form is in my handwriting - - I just didn't note

that on the back back there, and [the prosecutor] wanted to make sure that was corrected when we did the plea.

Trial counsel testified that Petitioner's plea was not coerced or involuntary. He said, "I was negotiating to the very best of my ability according to what [Petitioner] wanted to have happen that day."

*Analysis*

Petitioner contends that his guilty plea was unknowingly and involuntarily entered, and his trial counsel provided ineffective assistance because trial counsel did not provide him with certain information during discovery and because trial counsel did not review the rules of probation with him or the sex offender directives prior to entering the plea. Petitioner also claims that a material change was made to the plea agreement after he signed it.

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 205, 280 L. Ed. 2d 674 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard

9

of reasonableness under prevailing professional norms." *Id*. at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising there from is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. *Serrano v. State*, 133 S.W.3d 599, 605 (Tenn. 2004) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Following an evidentiary hearing, in a ruling from the bench, the post-conviction court concluded that Petitioner had failed to prove by clear and convincing evidence that trial counsel's performance was deficient or that Petitioner was prejudiced by any alleged deficiency. The court further concluded that Petitioner had failed to establish that his guilty plea was not entered knowingly and voluntarily. The post-conviction court found in part,

10

[I]n making my findings of fact and in judging the credibility, I find the [Petitioner] to be convicted of ten felonies, and portions of his testimony today were completely unbelievable; some were, in fact incredible. The Court places no weight on the testimony of [Petitioner]. The Court does not find [Petitioner] credible.

On the other hand, [trial counsel] testified today. He's been practicing law since 1988. He testified as to his educational background, his experience in criminal law, and his normal practice. The Court finds [trial counsel's] testimony to be extremely credible and credits his testimony.

*       *       *

[Trial counsel] testified and I find that [Petitioner] never flatly said, "I want a jury trial," after he was given everything in discovery that was written that he received.

*       *       *

I find for the record what happened absolutely incredible. With [Petitioner's] background, with the nature of the charges, he was - - [trial counsel] was told that [Petitioner] was tired of being in jail, that he wanted him to get him out of jail that day. And that's what [trial counsel] - - those were his marching orders and that's what he proceeded to do. And again, I find that incredible.

He goes through the process. They talk to me about the plea agreement. I accept it. [Trial counsel] testified that there was indication that this was against his will; it was not involuntary. And he negotiated what he wanted - - [Petitioner] wanted to happen.

*       *       *

The record is absolutely void, absolutely void, totally void, of any objections to this plea or the terms of the plea from [Petitioner]. Why? Because it was an incredible benefit to [Petitioner] when he pled guilty, being released from jail with his record.

I find the following conclusions of law: [Petitioner] has raised various issues that were set out orally today by the attorney who has adequately

11

represented [Petitioner] through this post-conviction procedure. I found - - the Court found one colorable claim when [Petitioner] originally filed the petition; that being ineffective assistance of counsel.

In the subsequent amended petition, [Petitioner] brings up another issue that I thought was credible, and that includes the entering of a[n] unknowing, unwilling, guilty plea in violation of due process.

Those two issues, major issues, have been pared down into the six issues that [trial counsel] brought up at the beginning of this hearing.

One, failure to share discovery with [Petitioner]. I find that is absolutely not true.

Number two, failure to review specific conditions and rules of probation. I find that the attorney, [trial counsel], had expected the probation officer to go over this with [Petitioner] and counted that to be done as part of his representation of [Petitioner]. He saw the probation officers come down here and go back to the jail. And what else can an attorney expect under those circumstances?

The third issue, no contact. I find that that issue carries no weight. It has not been proved because under no circumstances would any agreement be presented and agreed to from this Court that would allow contact with a victim or the victim's family.

Violation of the plea proceedings. I'll get to that in just a minute. Basically that alleges my error, and I'll get to that in a minute.

The next issue raised, terms added on no-contact provisions or proviso. Again, as I stated earlier, this is something that was made clear, I think. And [Petitioner] has no credibility in this particular issue. This would not be done.

Also, going through the offers and the changing of the conditions, I find that [Petitioner] has not carried the burden of proof on that particular issue.

And, six, [trial counsel's] alleged unwillingness to concede to [Petitioner's] request to take it to trial. That is absolutely not true. That

12

has not been proved by [Petitioner].  I find that these issues are not well taken.

*   *   *

I find, as a matter of law, that [Petitioner] has not proved the allegations of ineffective assistance of counsel by clear and convincing evidence. To the contrary, this Court finds that the defense attorney did an incredible job.  Yes, incredible, based upon his testimony, what he did, and what he ended up accomplishing.  Again, that's hard to believe coming back and reviewing the disposition of the case with the nature of the charges and [Petitioner's] background.

Also, coming to the issue of failure to - - of the Court in the plea proceedings to specifically ask if [Petitioner] entered this plea knowingly or intelligently or was forced or any promises were made.  I think it's clear that this is something that the Court does, but on this particular occasion it didn't do.  And I do find, relating to the facts, that this Court did not ask those particular questions regarding knowingly and forcefully and so forth, whether that had any effect on [Petitioner].  I did not do that.  And I find that as fact.

*   *   *

In this particular case, [Petitioner], the career offender, was walking out of the jail on that particular day.  I went through everything, and the plea proceedings have been made part of the record here.  And there was absolutely no indication that [Petitioner] did not want to do this.  It would be incredible if he didn't.  His testimony today is completely and totally unbelievable.

Further testimony on the record is [trial counsel] went to this plea confident that this is what [Petitioner] wanted to do, was in his best interest, was what he asked him to do, and this was voluntarily entered and something that [Petitioner] wanted to do.

There was substantial compliance.  There was compliance with due process here in going through the procedure ensuring that this was what [Petitioner] wanted to do.

13

I think it's totally absurd to think that [Petitioner] would come out and say, "I want to go to trial and risk a hundred years, and I don't want to be released today." That is not believable.

Therefore, I find that the voluntariness of the guilty plea here, according to *Lane* [*v. State*, 316 S.W.3d 555, 565 (Tenn. 2010)], the record, testimony, has not been proven by clear and convincing evidence. And the Court finds that there was no error of constitutional dimension to grant [Petitioner's] petition for post-conviction relief.

We conclude that the evidence does not preponderate against the post-conviction court's findings and conclusions. Although trial counsel did not give a copy of the CDs or DVDs contained in the State's discovery response to Petitioner or allow Petitioner to review them, trial counsel testified that he personally reviewed them and went over the content of them with Petitioner. Petitioner received a copy of all other information contained in the State's discovery. We note that the CDs or DVDs apparently contained interviews of the victim, Petitioner, and other witnesses. Petitioner was present for the preliminary hearing during which the victim testified, and other evidence was presented. Petitioner did not introduce copies of the CDs or DVDs into the record at the post-conviction hearing. Therefore, we can only speculate as to their specific content or how the evidence would have affected Petitioner's decision to plead guilty. *See Scott v. State,* 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). Finally, we note that at the post-conviction hearing, the trial court informed Petitioner that he had the right to review the CDs and DVDs. Petitioner told the trial court that he did not have the opportunity to view the evidence; however, he told the court that he understood. Petitioner did not make any further objection or comment to the trial court about not reviewing the CDs or DVDs.

As for trial counsel's alleged failure to review the rules of probation or the sex offender directives, trial counsel testified that it was the practice of the prosecutor assigned to Petitioner's case to have someone from "State probation" come to court and review the rules of probation and the sex offender directives with a defendant when a guilty plea was entered. On the day of Petitioner's guilty plea submission hearing, trial counsel saw a probation officer go into the holding area where Petitioner was being held. At the guilty plea submission hearing, the trial court told Petitioner that he would be on probation and have rules to follow. The trial court further informed Petitioner that he would be required to register as a sex offender and that Petitioner must comply with all of the sex offender directives and have a psychosexual evaluation. Petitioner indicated that was his understanding of the agreement, and he did not have any questions about it. Petitioner claimed that the rules of probation and the sex offender directive were not explained to him until April 10, 2013. However, on direct appeal from Petitioner's

14

probation revocation proceedings concerning this case, this court found that Petitioner's probation officer testified that Petitioner:

> [C]ame by her office on the morning of April 5, 2013, having been released from prison the previous night. The defendant completed, initialed, and signed the Tennessee Bureau of Investigation sexual offender instructions form, which outlined certain restrictions, including that "no sexual offender . . . whose victim was a minor shall knowingly reside with a minor." The form notes exceptions in certain cases for the offender's own children or step-children.

 *State v. Eric O. Turner*, No. M2014-00597-CCA-R3-CD, 2015 WL 3563053, at *1 (Tenn. Crim. App. June 9, 2015). Petitioner has not demonstrated that trial counsel's performance in this area was in any way deficient nor has he shown or even alleged how this affected his decision to plead guilty in this case.

Next, Petitioner contends that his plea agreement was changed after he signed it. He claims that he signed an agreement for eighteen years, two additional years than he had originally agreed upon, at forty-five percent in exchange for the "no contact" provision to be removed from the plea agreement. However, trial counsel testified that the prosecutor changed the plea offer from sixteen to eighteen years in exchange for allowing Petitioner to be released on time already served. When asked if the prosecutor would have allowed Petitioner to have contact with the victim, trial counsel replied, "Absolutely not." Trial counsel noted, and the transcript of the guilty plea submission hearing reflects, that the absence of the no-contact provision was pointed out by the prosecutor who informed the trial court that it was inadvertently left off of the eighteen-year plea agreement. The transcript of the guilty plea submission hearing further reflects that Petitioner indicated that he did not have a problem with the correction and that he accepted it. Again, Petitioner has failed to demonstrate that trial counsel's performance in this area was in any way deficient.

Finally, Petitioner argues that his guilty plea was not "entered into freely, voluntarily and knowingly" because the trial court failed to determine that his plea was voluntary and not the "result of force, threats, or promises (other than promises in a plea agreement)." The trial court also failed to "inquire whether [Petitioner's] willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and [Petitioner] or [Petitioner's] attorney." Additionally, Petitioner alleges that he was coerced by trial counsel because trial counsel convinced him that everyone was against him and that he would not receive a fair trial.

15

The record shows that Petitioner had ten prior felony convictions, and he had pled guilty on at least four prior occasions. Therefore, he was familiar with the guilty plea process. Trial court admitted that it specifically failed to ask Petitioner if he entered the plea "knowingly or intelligently or was forced or any promises were made."

Tennessee Rule of Criminal Procedure 11(b)(1) requires the trial court to determine that the defendant understands:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

The Rule further requires the court to "address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement)." Tenn. R. Crim. P. 11(b)(2). It is also the duty of the trial court to "inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.*

16

Literal compliance with the Rule is not required. *State v. Neal,* 810 S.W.2d 131, 137 (Tenn.1991), *overruled in part on other grounds by Blankenship,* 858 S.W.2d at 902. Instead, the Rule requires substantial compliance, which is met by expressing the substance of the required advice. *Id.* A patent omission from the required advice is error, but it is subject to harmless error analysis. *Id.* at 138. The level of harmless error analysis depends on whether the omission was constitutional error or merely a violation of the supervisory authority of the court. *Lane v. State,* 316 S.W.3d 555, 565 (Tenn. 2010).

The trial court did not specifically ask Petitioner if he entered the plea knowingly or intelligently or if he was forced to plead guilty, or whether any promises were made to him in exchange for entering the plea other than his willingness to plead guilty being a result of prior discussions between the prosecutor and trial counsel. The trial court did inform Petitioner that he was giving up his constitutional right to a jury trial and his right to confront and cross-examine the State's witnesses, "to exercise your privilege against compulsory self-incrimination, to bring in your own witnesses, and, if necessary, we'd get them here for you by subpoena." The trial court further informed Petitioner that he was giving up his right to have an attorney present at every phase of the jury trial or any possible appeal and that he was giving up all rights to appeal. Additionally, the written plea agreement signed by Petitioner recited that Petitioner would not have a further trial of any sort and that the agreements were of his own free will and choice and not the result of "threats or pressure of any kind, or promises of gain or favor from any source whatsoever[.]". *See Terrance Perkins v. State,* No. W2000-02910-CCA-MR3-PC, 2002 WL 1482691, at *3 (Tenn. Crim. App. Mar. 21, 2002) (noting that the petitioner had signed a document advising him of his constitutional rights and concluding that petitioner was not entitled to post-conviction relief).

Although Petitioner correctly points out these defects in his plea hearing, he does not say how the trial court's errors resulted in an unknowing and involuntary guilty plea. He claims that trial counsel coerced him into pleading guilty by convincing him that everyone was against him and that he would not receive a fair trial. However, the trial court specifically rejected Petitioner's testimony as not credible. Concerning the voluntariness of Petitioner's guilty plea, trial counsel testified that in his opinion, if Petitioner had felt that he was being coerced, abused, neglected, in any way, shape, or form, Petitioner would have let the Court know. Trial counsel also testified that if Petitioner had wanted a trial, he would have received one. He said Petitioner knew what the victim's testimony would be, and Petitioner made an "informed choice."

In evaluating whether the plea was voluntary, we conclude from Petitioner's previously noted sentences that he had some prior criminal convictions and accordingly, some familiarity with the criminal justice system. Trial counsel testified he spent time

reviewing the plea agreement with Petitioner, and Petitioner understood everything. Petitioner faced a possible sentence of one-hundred-eight years as a career offender for nine counts of aggravated statutory rape to be served in confinement, and he was also charged with possession of marijuana. As part of the agreement, six of the aggravated statutory rape charges and the drug charge were dismissed, and Petitioner pled guilty to an eighteen-year sentence for three counts of aggravated statutory rape, and he was released that day on time served thereby avoiding the greater sentence.

Petitioner has failed to establish that trial counsel provided ineffective assistance or that Petitioner's guilty plea was unknowingly or involuntarily entered.

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

18